

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-22-1994

# Keystone Chptr, Associated Bldrs. & Contrs., Inc. v. Foley

Precedential or Non-Precedential:

Docket 93-7548

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Keystone Chptr, Associated Bldrs. & Contrs., Inc. v. Foley" (1994). *1994 Decisions.* Paper 140.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/140

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 93-7547 & 93-7573
_____


KEYSTONE CHAPTER, ASSOCIATED BUILDERS AND CONTRACTORS, INC.,
in representation of its members

v.

THOMAS P. FOLEY, in his official capacity
as the Secretary of Labor and Industry
for the Commonwealth of Pennsylvania

PENNSYLVANIA STATE BUILDING AND CONSTRUCTION TRADES COUNCIL
(Amicus in District Court)

Thomas P. Foley,
   Appellant in No. 93-7547

Keystone Chapter, Associated Builders
and Contractors, Inc., in representation
of its members,
   Appellant in No. 93-7573


_____

No. 93-7548
_____


BELL TELEPHONE COMPANY OF PENNSYLVANIA;
COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO, DISTRICT 13

v.

THOMAS P. FOLEY; in his official capacity
as Secretary of Labor and Industry
for the Commonwealth of Pennsylvania;
JAMES R. DAVIS; FRAYDA KAMBER;
RICHARD W. MARTZ; JOHN H. MICKENS

PENNSYLVANIA STATE BUILDING AND
CONSTRUCTION TRADES COUNCIL, AFL-CIO
(Amicus in District Court)

Thomas P. Foley; James R. Davis;
Frayda Kamber; Richard W. Martz;
John H. Mickens,
            Appellants

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action Nos. 92-00459 & 92-01105)

Argued April 13, 1994

Before:  BECKER, MANSMANN and SCIRICA, <u>Circuit</u> <u>Judges</u>

(Filed September 22, 1994)

SUSAN J. FORNEY, ESQUIRE (Argued)
Office of Attorney General of Pennsylvania
Department of Justice
Strawberry Square, 15th Floor
Harrisburg, Pennsylvania 17120

  Attorney for Appellant/Cross-Appellee, Thomas P. Foley,
  and Appellants, Thomas P. Foley, James R. Davis,
  Frayda Kamber, Richard W. Martz and John H. Mickens


THOMAS R. DAVIES, ESQUIRE (Argued)
Harmon & Davies
2306 Columbia Avenue
Lancaster, Pennsylvania 17603

  Attorney for Appellee/Cross-Appellant,
  Keystone Chapter, Associated Builders and
    Contractors, Inc., in representation of its members, and
  Amicus Curiae Appellee/Cross-Appellant,
    Pennsylvania Utility Contractors Association


MARY M. McKENZIE, ESQUIRE (Argued)
Bell Atlantic Network Services, Inc.
1717 Arch Street
Philadelphia, Pennsylvania 19103

MARIE L. MARTINO, ESQUIRE
Dechert, Price & Rhoads
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, Pennsylvania 19103

Attorneys for Appellee,
The Bell Telephone Company of Pennsylvania

RICHARD H. MARKOWITZ, ESQUIRE
Markowitz & Richman
121 South Broad Street, Suite 1100
Philadelphia, Pennsylvania 19107

  Attorney for Appellee,
  Communications Workers of America, AFL-CIO, District 13


IRWIN W. ARONSON, ESQUIRE (Argued)
Handler, Gerber, Johnston & Aronson
150 Corporate Center Drive, Suite 100
P.O. Box 98
Camp Hill, Pennsylvania 17001-0098

  Attorney for Amicus Curiae Appellant/Cross-Appellee,
  Pennsylvania State Building and Construction Trades Council


JOHN H. WIDMAN, ESQUIRE
McAleese, McGoldrick & Susanin
Suite 240 – Executive Terrace
455 South Gulph Road
King of Prussia, Pennsylvania 19406

  Attorney for Amicus Curiae Appellants,
  The Roofing Contractors Association Industry Fund,
  Contractors Association of Eastern Pennsylvania,
  Mechanical Contractors Association of Eastern Pennsylvania,
  Mechanical Contractors of Western Pennsylvania,
  Laurel Mechanical Contractors, Inc.,
  Plumbing & Heating Contractors Association
    of Philadelphia & Vicinity, Inc.,
  Pen-Jer-Del Chapter of the National
    Electrical Contractors Association,
  Delaware Valley Insulation and Abatement
    Contractors Association, Inc.

THOMAS A. BECKLEY, ESQUIRE
Beckley & Madden
212 North Third Street
P.O. Box 11998
Harrisburg, Pennsylvania 17108

   Attorney for Amicus Curiae Appellants,
   SMACNA of Pennsylvania,
   Sheet Metal Contractors Association
     of Central Pennsylvania,
   Sheet Metal Contractors Association
     of Philadelphia and Vicinity,
   SMACNA of Western Pennsylvania,
   National Electrical Contractors Association, Inc.,
     Western Pennsylvania Chapter,
   Laurel Mechanical Contractors Association, Inc.,
   Mechanical Contractors of Northwest Pennsylvania,
   Painting and Decorating Contractors of America,
     Harrisburg Chapter,
   Masonry Contractors Association of Central Pennsylvania


RICHARD B. SIGMOND, ESQUIRE
RICHARD C. McNEILL, JR., ESQUIRE
Sagot, Jennings & Sigmond
1172 Public Ledger Building
Independence Square West
Philadelphia, Pennsylvania 19106

   Attorneys for Amicus Curiae Appellant,
   Steamfitters Local Union No. 420, United Association of
   Journeymen and Apprentices of the Plumbing and Pipefitting
   Industry


DEBORAH J. NATHAN, ESQUIRE
Cleckner & Fearen
Willow Grove Plaza, Suite 2000
102 York Road
Willow Grove, Pennsylvania 19090

   Attorney for Amicus Curiae Appellee/Cross-Appellant,
   Pennsylvania School Boards Association, Inc.

MAURICE BASKIN, ESQUIRE
Venable, Baetjer, Howard & Civiletti
1201 New York Avenue, N.W., Suite 1000
Washington, D.C. 20005

   Attorney for Amicus Curiae Appellee/Cross-Appellant,
   Central Pennsylvania Chapter, Lehigh Valley Chapter,
   Southeast Pennsylvania Chapter, and Western Pennsylvania
   Chapter of Associated Builders and Contractors, Inc.
   and Associated Builders and Contractors, Inc.


LOUDON L. CAMPBELL, ESQUIRE
Calkins & Campbell
223 North Front Street
P.O. Box 1188
Harrisburg, Pennsylvania 17108

   Attorney for Amicus Curiae Appellee,
   Pennsylvania Builders Association


ROBIN S. CONRAD, ESQUIRE
National Chamber Litigation Center, Inc.
1615 H Street, N.W.
Washington, D.C. 20062

   Attorney for Amicus Curiae Appellee,
   Chamber of Commerce of the United States of America


_____

OPINION OF THE COURT
_____


SCIRICA, <u>Circuit</u> <u>Judge</u>.


          In this appeal, we must decide whether the Employee

Retirement Income Security Act of 1974 (ERISA)[1] preempts a

_____

[1]. Pub. L. No. 93-406, 88 Stat. 829, (codified as amended in
scattered sections of 5, 18, 26, 29, 31, & 42 U.S.C.).

Pennsylvania minimum wage law applying to public works projects. We hold that such a law may not refer to ERISA plans or accord them special treatment, but may set minimum wages and give employers the option of satisfying a portion of the wage through contributions for employee benefits.

An employer, an employers' association, and a labor union[2] sued Pennsylvania's Secretary of Labor and Industry and the members of the state Prevailing Wage Appeals Board (collectively, the Secretary) in federal district court, claiming Pennsylvania's Prevailing Wage Act (the Act),[3] its accompanying regulations, and an administrative Declaratory Order interpreting the Act are preempted by ERISA. The district court agreed and overturned the Act, regulations, and order. The Secretary of Labor and Industry appeals, and the employers' association cross-appeals.

We agree the Declaratory Order implements the Act in a manner preempted by ERISA. But we find the Act and its regulations are not preempted because they confer broad authority that may be implemented in a manner consistent with ERISA. Therefore we will affirm the judgment of the district court striking the Declaratory Order, but reverse its judgment striking the Act and accompanying regulations.

_____

[2]. These were, respectively, the Bell Telephone Company of Pennsylvania, Keystone Chapter, Associated Builders and Contractors, Inc., and the Communications Workers of America, AFL–CIO, District 13..

[3]. P.L. 987 (1961) (codified at 43 P.S.A. § 165).

**I.**

**A.   The Prevailing Wage Act**

The purpose of the Prevailing Wage Act "is to protect workers employed on public projects from substandard wages by insuring that they receive the prevailing minimum wage." Lycoming County Nursing Home v. Pennsylvania, 627 A.2d 238, 242 (Pa. Commw. Ct. 1993).  The statute provides, "Not less than the prevailing minimum wages as determined hereunder shall be paid to all workmen on public work," 43 P.S.A. § 165-5, and sets forth general rules for determining prevailing minimum wages.  Before public contracts are put out to bid, the Secretary of Labor and Industry, in consultation with an Advisory Board, determines the prevailing minimum wage for each locality and for each "craft or classification" of worker to be employed.  43 P.S.A. § 165-7.  In making this determination, "employer and employe contributions for employe benefits pursuant to a bona fide collective bargaining agreement shall be considered an integral part of the wage rate."  Id.  The statute does not define "prevailing minimum wage rate," nor specify how contributions for benefits are to be integrated into the wage rate.[4]

The seven-member Prevailing Wage Appeals Board hears "any grievance or appeal arising out of the administration of

---

[4].  Pennsylvania's Commonwealth Court has held that despite the lack of definition the terms "prevailing minimum wage rate" and "craft or classification" are "adequate primary standards to guide the Secretary in the exercise of his duties under [§ 165-7]," so that the statute does not assign the Secretary "unacceptably excessive discretion."  Pennsylvania v. Altemose Construction Co., 368 A.2d 875, 881 (Commw. Ct. Pa. 1977).

this act" "[p]romulgate[s] rules and regulations necessary to carry out [its] duties."  43 P.S.A. § 165-2.2(e).  Contractors and subcontractors must "keep an accurate record showing the name, craft and the actual hourly rate of wage paid to each workman employed by him in connection with public work" for two years following payment, subject to inspection by the Secretary and the public body awarding the contract.  Id. § 165-6.

### B.   The Accompanying Regulations

The Pennsylvania Code, Title 34 §§ 9.101-9.112, provides additional rules for calculating and enforcing the prevailing minimum wage in public works contracts.  The regulations make clear that a prevailing minimum wage will state a cash wage and a level of benefits contributions as separate components.  Contractors and subcontractors must pay "[n]ot less than the general prevailing minimum wage rates determined by the Secretary." If a contract does not provide for employee benefits contributions "which the Secretary has determined to be included in the general prevailing minimum wage rate," the employer may pay "the monetary equivalent thereof."  Id. § 9.106.

Contributions for employee benefits are defined as "`[f]ringe benefits' paid or to be paid, including payment made whether directly or indirectly, to the workmen for sick, disability, death, other than Workmen's Compensation, medical, surgical, hospital, vacation, travel expense, retirement and pension benefits."  Id. § 9.102.  Contractors may pay their workers above the prevailing rate.  Id.

To determine the prevailing minimum wages and benefits in a locality, the Secretary considers local collective bargaining agreements between established bargaining representatives and employers and other information. Id. § 9.105. The regulations specify additional records and reporting requirements for employers. Id. §§ 9.109, 9.110. The Secretary may investigate and hold hearings on allegations of underpayment, and may bar public contracts with a violating firm and request the Attorney General to recover penalties. Id. § 9.111.

### C.  The April 13, 1992 Declaratory Order

Although the Act and regulations specify the prevailing minimum wage will have separate cash and benefits components, they do not state whether the benefits component should merely state the total level of benefits contributions an employer must make (through benefits contributions or their cash equivalent), or whether it should specify which types and levels of benefits must be given. That issue has been resolved by the Secretary and Board in different ways at different times.

For several years prior to April 13, 1992, the Secretary used a "line-item" approach in determining compliance with a prevailing wage's benefits component.[5] The Secretary made

---

[5]. The Department apparently officially adopted the line-item approach in 1988. In its brief to the Prevailing Wage Appeals Board, the Prevailing Wage Division of the Department of Labor and Industry cites as its earliest authority for the line-item approach a 1988 decision of the Secretary, In re: Francesco Scrivofilo, t/d/b/a Franco Elec. Co., Determination of the Secretary (Dec. 1, 1988). Bell and the Communications Workers of America claim their wage and benefits packages were not reviewed for line-item compliance for a number of years, presumably prior to 1988.

a "predetermination" of the prevailing wage for each category of worker in a given locality, specifying the prevailing levels of benefits in a number of categories, such as "health-and-welfare," "pension," and "apprenticeship-and-training". An employer had to meet the prevailing level of each category of benefit, or pay the shortfall in cash to the worker. An employer was not given credit toward the benefits component for benefits provided in a given category in excess of that required in the predetermination, nor for any benefits paid in a category not included in the predetermination. Thus, in addition to paying the prevailing cash wage, an employer was required either to make benefits contributions in the specified categories and amounts or to pay cash to the extent its benefits contributions fell short in any specified category.[6]

On November 28, 1990, counsel for Keystone Chapter, Associated Builders and Contractors, Inc., a construction industry employers' association wrote to the Secretary,

---

[6]. For example, a prevailing minimum wage predetermination for a particular classification of worker on a public works project might be $7 cash, $2 pension, and $1 health-and-welfare, per hour. An employer could pay as specified in the predetermination -- $7 per hour cash, $2 pension, and $1 health-and-welfare -- or substitute cash for some or all of the prevailing benefits -- for example, $8 cash, $1 pension, and $1 health-and-welfare, or $10 cash and no benefits. However, an employer paying $7 cash, $2 pension, and $1 for apprenticeship-and-training would not satisfy the minimum, because it had neither contributed $1 for health-and-welfare nor replaced it with $1 cash. Similarly, an employer paying $7 cash and $3 pension would not be in compliance -- notwithstanding the extra dollar in the pension category; it too would be required either to pay $1 health-and-welfare or replace that contribution with $1 cash.

complaining about the line-item approach. The complaint was referred to the Prevailing Wage Appeals Board, which treated it as a "Petition for Declaratory Order" and heard oral argument. Bell Telephone Co., an employer that performs public work, also participated in the proceeding. The petitioners argued that the line-item approach was not the best interpretation of the Prevailing Wage Act, that it was unfair to non-union and non-local contractors, and that it was preempted by ERISA. The Prevailing Wage Division of the Department of Labor and Industry (the Division) conceded that the Prevailing Wage Act did not require line-item specification of fringe benefits, but stated that as remedial legislation it should be interpreted broadly in favor of the protected class.[7]

On April 13, 1992, apparently in response to the petitioners' ERISA preemption arguments, the Prevailing Wage Appeals Board issued a Declaratory Order modifying the implementation of the Prevailing Wage Act. The Board stated it "should interpret state law so that it comports with constitutional and federal law," Keystone App. at 71, and established a special bona fide status for contributions for ERISA benefits. It ordered:

> 2. That the [Prevailing Wage] Division must determine, in the first instance, whether or not a contribution for employee benefits is bona fide;

---

[7]. John T. Kupchinsky, attorney for the Division, stated, "If you're going to fudge things, you fudge things to get more people covered by the act . . . ." Transcript of Oral Argument before Prevailing Wage Appeals Board, Nov. 12, 1991 at 35, Keystone App. at 180.

3.  That a contribution is bona fide if that contribution:  (a) is made to an "employee benefit plan" or fund or program subject to the [ERISA]; (b) has been determined to be bona fide by the Division; and (c) is not required by federal, state or local law;

.  .  .  .

Keystone App. at 73-74.

The next part of the order, paragraph 4, appears to abolish the line-item system, although it is not clear if this applies only to the ERISA benefit contributions discussed in paragraph 3, or to all benefits.  It provides:

4.  That credit for contributions for employee benefits, up to the maximum established by the predetermination, shall be given as follows:

.  .  .

c)  Credit shall be given for contributions in each predetermined category up to the predetermined rate for each category;

d)  Contributions which exceed the predetermined rate in any employee benefit category shall be credited in any other predetermined benefit category (or categories) for which the predetermined rate has not been satisfied;

e)  Credit shall be given for contributions for employee benefits not included in the predetermined benefit categories;

f)  The maximum credit for contributions for employee benefits shall not exceed the total amount of contributions for employee benefits established by predetermination;

.  .  .  .

Keystone App. at 74-75.

As interpreted by the Prevailing Wage Division, the Declaratory Order establishes that any contribution to an ERISA plan is per se bona fide, while other benefits contributions must be certified by the Division as such.  Furthermore, ERISA

benefits contributions are counted toward the benefits minimum no matter what category they fall in, while the line-item approach is maintained for non-ERISA benefits contributions. Letter from Susan J. Forney, Senior Deputy Attorney General, to the Court, (April 18, 1994).[8] We accept this reading of the Declaratory Order as a reasonable interpretation.[9]

### D. Litigation

Keystone filed a complaint in United States District Court for the Middle District of Pennsylvania seeking injunctive relief against the Secretary. Keystone claimed the Prevailing Wage Act was preempted by ERISA because it prevented employers from setting the terms of their benefits plans. Bell Telephone

---

[8]. A May 29, 1992 memo from Field Inspection Supervisor A. Robert Risaliti to the Field Inspectors, who enforce the Prevailing Wage Act, confirms that the Declaratory Order has been thus implemented. It states that neither the Division nor the inspector is authorized to object to the presumed bona fide status of ERISA contributions, whether or not the contributions match the categories in the predetermination. The memo also indicates the line-item approach is still applied to non-ERISA benefits.

Ms. Forney's letter came as a correction to the Secretary's position at oral argument, that pursuant to the April 13 Order the line-item approach was abandoned for all benefits, and that any non-ERISA benefit contributions are credited against the benefit contribution rate if they were judged by the Division to be bona fide. See Brief for Appellants at 10-11.

[9]. The Appellees differ in their interpretation of the order. Keystone essentially agrees with the Secretary's interpretation. Bell and the CWA contend that only contributions to ERISA benefit plans now count towards the fringe benefit component; other benefits, they say, will not be credited at all. Although the order is somewhat unclear, we find it implausible that the Board would disqualify all non-ERISA benefits contributions from counting toward the prevailing minimum, as this would be a major departure from past practice without grounding in the Act.

and its employees' union, the Communications Workers of America (CWA), brought a suit against the Secretary and the members of the Prevailing Wage Appeals Board seeking a declaratory judgment that the Prevailing Wage Act was preempted by ERISA or by the NLRA.[10] They claimed their participation in public works projects was impeded because their collective bargaining agreements, which include centrally administered benefits plans for workers in several states, would not qualify as meeting the prevailing wage. Some of these contracts included non-ERISA benefit contributions that they believed would not be credited toward the benefits component, and some contracts gave benefits in excess of the prevailing benefits minimum that would not be credited against the cash wage component. Keystone, Bell, the CWA, and the defendants moved for summary judgment.

On July 30, 1993, the district court declared the Prevailing Wage Act, its accompanying regulations, and the Declaratory Order preempted by § 514(a) of ERISA, 29 U.S.C. § 1144(a) (1988), which preempts state law relating to ERISA plans. The court found (1) the Declaratory Order specifically referred to ERISA plans, (2) the Prevailing Wage Act could affect the level of benefits paid to employees by discouraging benefits in excess of the prevailing rate, and (3) the Act imposed administrative burdens on ERISA plans by requiring employers to keep records of wages and benefits. The court declined the Secretary's request to sever the portion of the Act covering

---

[10]. The latter claim was dismissed and is not raised on appeal.

fringe benefits and leave standing a requirement that government contractors simply meet the prevailing cash wage because it believed such a system would be contrary to legislative intent.

On appeal, the Secretary argues the district court erred in finding the Prevailing Wage Act, its regulations, and the Declaratory Order preempted. Alternatively, he requests that if the Act's integration of benefits into the prevailing wage violates ERISA, we sever that portion and allow the Act to stand to the extent it regulates cash wages. Keystone and Bell ask us to affirm the district court. Keystone also cross-appeals, requesting that if we do not affirm the district court, we enjoin the Secretary from specifying line-item requirements for ERISA benefit contributions. The CWA requests that only the Declaratory Order be invalidated, claiming the law itself can be interpreted in a manner that is not preempted.

The district court had jurisdiction of these ERISA preemption claims under 28 U.S.C. § 1331 (1988). "A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96 n.14.[11]

---

[11]. Steamfitters Local Union No. 420, in its amicus brief, argues that New Jersey State AFL-CIO v. New Jersey, 747 F.2d 891 (3d Cir. 1984), bars federal question jurisdiction. While we held there that a district court lacked jurisdiction of a labor union's action for declaratory judgment that ERISA preempted four New Jersey statutes, our holding simply rejected the union's

We have appellate jurisdiction under 28 U.S.C. § 1291, and our review of a summary judgment is plenary, <u>Public Interest Research v. Powell Duffryn Terminals, Inc.</u>, 913 F.2d 64 (3d Cir. 1990), <u>cert. denied</u>, 498 U.S. 1109 (1991). "[T]he appellate court is required to apply the same test the district court should have utilized initially. Inferences to be drawn from the underlying facts contained in the evidential sources submitted to the trial court must be viewed in the light most favorable to the party opposing the motion." <u>Goodman v. Mead Johnson & Co.</u>, 534 F.2d 566, 573 (3d Cir. 1976), <u>cert. denied</u>, 429 U.S. 1038 (1977). The district court's conclusions of law are subject to plenary review. <u>Gregoire v. Centennial Sch. Dist.</u>, 907 F.2d 1366, 1370 (3d Cir.), <u>cert. denied</u>, 498 U.S. 899 (1990).

**II.**

**A. ERISA**

ERISA provides uniform federal regulation of employee benefit plans. It is a comprehensive statute that protects the interests of employees and their beneficiaries in employee benefit plans, and promotes administrative efficiency through exclusive federal regulation of such plans. ERISA subjects

(..continued)
attempt to sue under ERISA's jurisdictional provision, 29 U.S.C. § 1132(a)(1)(B) & (e)(1), which grants federal jurisdiction of civil actions only by participants and beneficiaries. <u>New Jersey State AFL-CIO</u>, 747 F.2d at 892-93. As we explained in <u>Northeast Dept. ILGWU Health & Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund</u>, 764 F.2d 147, 153 n.3 (3d Cir. 1985), "[t]he matter of federal question jurisdiction was not raised by the parties in <u>AFL-CIO</u>, nor was it considered by the panel." <u>Shaw</u>, as quoted above, makes clear that there is federal question jurisdiction where a party claims it will be subject to state regulation preempted by ERISA.

employee benefit plans to participation, funding, and vesting requirements, and to uniform standards on matters like reporting, disclosure, and fiduciary responsibility. Shaw, 463 U.S. at 90–91.

Section 514(a) of ERISA promotes uniform regulation of employee benefits plans, by preempting, with limited exceptions not applicable here, "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a). ERISA covers pension benefit plans and plans for welfare benefits such as medical benefits, training programs, and daycare centers.[12] 29 U.S.C. § 1002(3) (1988). Typically, these plans create a need for "an ongoing administrative program for processing claims and paying benefits." Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 12 (1987).

---

[12]. The statute defines "employee benefit plan" as an "employee welfare benefit plan or an employee pension benefit plan or a plan which is both." 29 U.S.C. § 1002(3). An employee welfare benefit plan is any "plan, fund, or program . . . established or maintained by an employer or by an employee organization, or by both" to provide "(A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions)." Id. § 1002(1). 29 U.S.C. § 186(c) involves union welfare funds for benefits such as vacation benefits, scholarships, and housing assistance. An employee pension benefit plan is "any plan, fund, or program . . . established or maintained by an employer or by an employee organization, or by both . . . [that] (i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond . . . ." Id. § 1002(2)(a).

In determining the scope of § 514(a), "as in any pre-emption analysis, `[t]he purpose of Congress is the ultimate touchstone.'"  Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 747 (1985) (quoting Malone v. White Motor Corp., 435 U.S. 497, 504 (1978)) (alteration in original) (internal quotation marks and citation omitted).  Recognizing the complex administrative task faced by employers maintaining employee benefit plans, Congress enacted § 514(a) to ensure that plan administration is subject to a single set of regulations rather than a "patchwork scheme."  Fort Halifax, 482 U.S. at 11.

We summarized the standards for ERISA preemption in United Wire v. Morristown Memorial Hosp., 995 F.2d 1179 (3d Cir.), cert. denied, 114 S. Ct. 382, 383 (1993):

> The preemption clause of ERISA is notable for its breadth, and manifests Congress's intention to establish pension plan regulation as an exclusively federal concern.  Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981).  The Supreme Court has noted that a state law "relates to" an ERISA governed plan, within the meaning of § 514(a)'s preemptive reach, "if it has a connection with or reference to such a plan."  Shaw v. Delta Air Lines, 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983).  The Court in Shaw noted, however, that "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law `relates to' the plan."  463 U.S. at 100, n. 21, 103 S.Ct. at 2901 n. 21.

Id. at 1191.  We then set out guidelines for determining if a law related, directly or indirectly, to ERISA plans:

> A rule of law relates to an ERISA plan if it is specifically designed to affect

employee benefit plans, if it singles out such plans for special treatment, or if the rights or restrictions it creates are predicated on the existence of such a plan.
. . .
This does not end our inquiry, however. A state rule of law may be preempted even though it has no such direct nexus with ERISA plans if its effect is to dictate or restrict the choices of ERISA plans with regard to their benefits, structure, reporting and administration, or if allowing states to have such rules would impair the ability of a plan to function simultaneously in a number of states.

Id. at 1192–93 (footnotes omitted). We will apply this analytic framework to the Declaratory Order, the Prevailing Wage Act, and its accompanying regulations.

### B. The Declaratory Order

The District Court correctly held that ERISA preempts the Declaratory Order, because it "singles out [ERISA] plans for special treatment."[13] United Wire, 995 F.2d at 1192. Under the Order, the Prevailing Wage Division treats contributions for ERISA benefits as per se bona fide, but must approve other contributions. Further, any ERISA benefits contributions count toward the benefits minimum, while non-ERISA benefits only count if they are in one of the benefit categories listed in the predetermination.

---

[13]. The Declaratory Order is "State law" subject to ERISA preemption under § 514, for "State law" includes not only statutes, but "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1). See National Elevator Indus., Inc. v. Calhoon, 957 F.2d 1555 (10th Cir.) (invalidating ruling of Commissioner of Oklahoma Department of Labor under state's prevailing wage act as preempted by ERISA), cert. denied, 113 S. Ct. 406 (1992).

Such special treatment for ERISA plans is grounds for preemption. In Mackey v. Lanier Collection Agency & Serv., 486 U.S. 825 (1988), the Supreme Court struck down a provision of a Georgia statute that barred garnishment of ERISA plan funds. Because the provision expressly referred to ERISA benefit plans and accorded them special treatment, the Court found it "related to" such plans within the meaning of § 514(a). Id. at 829-30. Though the law might have been enacted to further ERISA's purposes, the Court said, "[l]egislative `good intentions' do not save a state law within the broad pre-emptive scope of § 541(a)." Id. at 830. See also McCoy v. Massachusetts Inst. of Tech., 950 F.2d 13, 19-20 (1st Cir. 1991) (§ 514(a) preempts mechanics' lien law expressly inuring lien to advantage of various types of ERISA plans), cert. denied, 112 S. Ct. 1939 (1992).

Here, too, there may have been "good intentions" behind the special treatment given to ERISA plans. The Prevailing Wage Appeals Board was responding to a claim that the Prevailing Wage Act was preempted by ERISA, and stated its intention to "interpret state law so that it comports with constitutional and federal law." Declaratory Order at 2. Despite this effort, the Board interpreted the Prevailing Wage Act in a way that is preempted by ERISA.[14]

---

[14]. Amicus Curiae, the Roofing Contractors Association, argues that preemption should not apply to state actions where the state is acting as a proprietor. Because we find the Prevailing Wage Act and its accompanying regulations not preempted on other grounds, this argument could only affect our decision regarding the Declaratory Order. The Association relies on Building & Constr. Trades Council v. Associated Bldrs. and Contractors, 113 S. Ct. 1190 (1993), in which the Supreme Court held a bid

## C.  The Act and its accompanying regulations

Although the Declaratory Order implemented the
Prevailing Wage Act in a manner preempted by ERISA, we hold that
neither the Prevailing Wage Act nor its accompanying regulations
are preempted.  Under at least one reasonable interpretation of
the Act and regulations, an interpretation the Agency is free to
adopt, the Act and regulations merely require that the Secretary
set a prevailing wage that consists of a cash component and may
include a benefits component.  Employers must pay the cash

(..continued)
specification by a Massachusetts state authority, requiring
bidders to abide by a particular labor agreement, was not
preempted by the National Labor Relations Act, despite the
argument that the bid specification was a state intrusion into
labor-management relations, a regulatory realm preempted by the
federal government under the NLRA.
        The Supreme Court rejected the preemption claim because
the state was acting "as a market participant with no interest in
setting policy," rather than in "a role that is
characteristically governmental."  Id. at 1197.  The Court
explained that when a state acts in the market place as an owner
and manager of property, it "is not subject to pre-emption by the
NLRA, because pre-emption doctrines apply only to state
regulation."  Id. at 1196.
        Were we to reach the merits of this novel argument, we
would have to begin by considering the differences between
preemption under the NLRA, which has no explicit preemption
provision, and preemption under ERISA, whose preemption clause is
expansive.  We need not pursue the inquiry, however, because the
theory could not apply here in any event.  In applying the
Prevailing Wage Act, Pennsylvania is clearly acting with an
"interest in setting policy," not as a proprietor.  Id. at 1197.
The Prevailing Wage Act aims to ensure that workers receive
adequate wages, a governmental objective.  Throughout its brief,
the state justifies its action in terms of its "right to
establish labor standards," which it calls a "traditional police
power."  Brief for the Appellants at 14-15.  It would be
difficult for the state to claim it is acting as a private market
participant when it is making rules that raise the cost of its
contracts.

component of the wage in cash, but they may pay the benefits

component either in benefits or cash.  Any benefits they provide,

regardless of type, would count toward the benefits component.[15]

Under this interpretation, the Prevailing Wage Act and the

regulations do not control benefits, but rather require certain

wages to be paid.

The Act and regulations thus fall into the field

of state regulation of wages, which is one of those "areas of

traditional state regulation"  that we "must presume that

Congress did not intend to pre-empt." Metropolitan Life Ins. Co.

v. Massachusetts, 471 U.S. 724, 740 (1985).  That presumption is

rebuttable, however, for "to avoid being preempted, a state law

in addition to being an exercise of traditional police powers

must also affect the plan `in too tenuous, remote or peripheral a

manner to warrant a finding that the law "relates to" the plan.'"

Gilbert v. Burlington Indus., Inc., 765 F.2d 320, 327 (2d Cir.

1985) (quoting Shaw, 463 U.S. at 100 n.21), aff'd, 477 U.S. 901

---

[15]. We read the Prevailing Wage Act as a statute that may properly be implemented in a number of ways, so that in overturning the Declaratory Order we need not invalidate the Prevailing Wage Act itself or its regulations.  We see nothing in the Act or the regulations requiring that the benefits component specify particular types of benefits and the amounts to be contributed in each.  The variety of official interpretations given the Prevailing Wage Act at different times shows that the Secretary and the Prevailing Wage Appeals Board also believe line-item specification of benefits is but one of the approaches at their disposal under the Act.  See supra, note **Error! Bookmark not defined.**.

There may be other interpretations of the statute that are not preempted.  Because there is one such reasonable interpretation, the Act and regulations themselves are not preempted.

(1986).  Nevertheless, the state law at issue here avoids preemption because it does not impede the goals of ERISA and has only incidental and insignificant relations to ERISA plans.

### 1.  Direct relation

The Prevailing Wage Act and regulations lack any of the three types of direct relations to ERISA plans described in United Wire.  See supra at 20.  The Act and regulations are not "specifically designed to affect employee benefit plans."  United Wire, 995 F.2d at 1192.  The Act aims to protect workers on public projects from substandard pay by requiring a minimum cash wage that may be supplemented by either prevailing benefits or their cash equivalent.  Neither the Act nor its regulations require that certain benefits plans be established, that certain benefits be given, or that ERISA plans be administered in a certain way.

The Act and regulations do not "single[] out [ERISA] plans for special treatment," or even refer to such plans.  United Wire, 995 F.2d at 1192.  Rather, they merely refer to employee benefits, with no distinction between ERISA and non-ERISA benefits.  The Supreme Court has rejected the argument "that ERISA forecloses virtually all state legislation regarding employee benefits," and instead directs us to inquire whether the state law "relates to" ERISA benefit plans.  Fort Halifax, 482 U.S. at 7.  While some of the benefits the Secretary is permitted to count in calculating the prevailing wage will come from ERISA

plans,[16] we do not believe ERISA requires a state to ignore the existence of ERISA benefits when considering overall remuneration to workers. The Court has allowed the inclusion or implication of ERISA plans in generally valid state legislation. See, e.g., Mackey, 486 U.S. at 830-841 (approving garnishment law that would apply to ERISA plan benefits as well as other assets of debtors); Shaw, 463 U.S. at 106-08 (approving disability benefits requirements that could be satisfied through ERISA plans). Indeed, Mackey suggests that a law would be preempted if it counted all remuneration to workers except benefits from ERISA plans, for this would be special treatment.

Finally, although ERISA plans are within the scope of the regulator's consideration under the Prevailing Wage Act, the Act does not create a legislative scheme in which an ERISA plan is so central that "the rights or restrictions [the law] creates are predicated on the existence of such a plan." United Wire, 995 F.2d at 1192. An example of a law predicated on ERISA plans

---

[16]. Indeed, one regulation gives examples of employee benefits that include benefits which would come from ERISA plans, such as "retirement and pension benefits." 34 Pa. Code § 9.102. While the Supreme Court has held a statute's reference to ERISA plans grounds for preemption, District of Columbia v. Greater Washington Bd. of Trade, 113 S. Ct. 580 (1992), as discussed below, that statute referred only to the ERISA plan as the basis for the rights it accorded. But the listing of an ERISA plan benefit as an example of the factors to be calculated into a broader determination, such as a prevailing wage, is in and of itself inconsequential. We have held that "[w]here, as here, a reference to an ERISA plan can be excised without altering the legal effect of a statute in any way, we believe the reference should be regarded as without legal consequence for § 514(a) purposes." United Wire, 995 F.2d at 1192 n.6.

was the statute in Greater Washington Bd. of Trade, 113 S. Ct. at 584, which required health coverage for injured employees on workers' compensation to be equivalent to regular employees' "existing health insurance coverage." Such coverage was, in turn, "a welfare benefit plan under ERISA," so that injured employees' rights were premised on the existence of ERISA plans. Id. Similarly, in Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139-140 (1990), the Court held ERISA preempted a state cause of action in favor of an employee who alleged his employer terminated him to avoid contributing to his pension plan, where "the existence of a pension plan [was] a critical factor in establishing liability."

In United Wire we set out a test to distinguish between laws predicated on ERISA plans and laws that implicated such plans in a nonessential manner. A New Jersey statute set hospital rates for all payors, and included a surcharge to compensate hospitals for their losses in providing care to Medicare patients. While the dissent argued that New Jersey's system for funding underreimbursed care would not be viable without the participation of ERISA plans, United Wire, 995 F.2d at 1199-1200 (Nygaard, J., dissenting), we stated:

> [I]t is of no legal consequence if removing ERISA plans from the scene would diminish the likelihood that the statute would meet its social goals. Rather, the test for preemption in this regard is whether the existence of ERISA plans is necessary for the statute to be meaningfully applied.

Id. at 1192 n.6.  Because the New Jersey law set standard rates and surcharges for all payors, we held it could be meaningfully applied in the absence of ERISA plans.  Id.

In the absence of ERISA plans, the Prevailing Wage Act could be meaningfully applied.  The Act requires the Secretary to measure prevailing benefits contributions in a locality for a given class of worker.  The Secretary would do so even if all of these were non-ERISA benefits -- that is, benefits "payable on a regular basis from the general assets of the employer," Massachusetts v. Morash, 490 U.S. 107, 116 (1989), and that "create[] no need for an ongoing administrative program for processing claims and paying benefits," Fort Halifax, 482 U.S. at 12.  Similarly, the statute would be "meaningfully applied" in the absence of ERISA plans if a public works contractor satisfied the benefits component of a given prevailing wage by making contributions for non-ERISA benefits, or by paying the equivalent in cash.  Thus, no element of the Prevailing Wage Act is premised on the existence of an ERISA plan.

## 2.  Indirect relation

We next determine whether there is an indirect relation to ERISA plans requiring preemption.  "ERISA pre-empts any state law that refers to or has a connection with covered benefit plans (and that does not fall within a § 514(b) exception) `even if the law is not specifically designed to affect such plans, or the effect is only indirect,' and even if the law is `consistent with ERISA's substantive requirements.'"  Greater Washington Bd. of Trade, 113 S. Ct. at 583 (citations omitted).  ERISA preempts

laws that "dictate or restrict the choices of ERISA plans with regard to their benefits, structure, reporting and administration," or "impair the ability of a plan to function simultaneously in a number of states."  United Wire, 995 F.2d at 1193.  Here, however, the only connections between ERISA plans and the Act are "too tenuous, remote, or peripheral . . . to warrant a finding that the law `relates to' the plan."  Shaw, 463 U.S. at 100, n. 21.

State laws are preempted because they dictate or restrict ERISA plans when, for example, they eliminate a method of calculating benefits in ERISA plans that is permitted by federal law, FMC Corp. v. Holliday, 498 U.S. 52 (1990) (state law prohibiting ERISA plans from requiring reimbursement of benefits from beneficiaries who recover in tort for the same expenses preempted by ERISA); Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504 (1981) (state law prohibiting offset of workers' compensation awards against retirement benefits preempted by ERISA).  A state cannot require an employer to contribute to certain ERISA plans, Local Union 598 v. J.A. Jones Constr. Co., 846 F.2d 1213 (9th Cir.) (state prevailing wage statute requiring contributions to apprenticeship program, an ERISA plan, preempted), aff'd 488 U.S. 881 (1988), or to provide certain benefits through an ERISA plan, Standard Oil Co. v. Agsalud, 633 F.2d 760 (9th Cir. 1980) (Hawaii law requiring comprehensive health benefits for all workers preempted), aff'd, 454 U.S. 801 (1981).  One court has held that favoring one ERISA plan over another through financial incentives is barred.  National

Elevator Industry, Inc., 957 F.2d at 1559 (Oklahoma prevailing wage law allowing reduced trainee wages only for participants in certain ERISA training programs preempted).

### a. Cash component

The primary restriction imposed by the Prevailing Wage Act is that employers on public contracts pay the predetermined prevailing minimum wage which, as we have described, has a cash component and a benefits component. We will consider each component in turn. The cash component fixes a minimum cash wage that must be paid, regardless of benefits contributions. This does not dictate or restrict the choices of ERISA plans, directly or indirectly. Employers must pay the cash minimum, regardless of what benefits they provide.

Appellees argue that the Prevailing Wage Act restricts their choice of plan benefits and structure because employers are not given credit for benefits contributions beyond the prevailing benefits minimum. This, they say, makes it difficult for a single plan "to function simultaneously in a number of states." United Wire, 995 F.2d at 1193. Bell explains that it negotiates uniform contracts with its workers in several states that may award lower wages and higher benefits than those called for in the prevailing minimum wage for a particular public works project. In this case, Bell says it would be forced to continue the benefits contributions it had agreed to in its national contract, but also raise its wages on the public works project.

Ironically, the Appellees here are objecting to an aspect of the Prevailing Wage Act that does not relate enough to

employee benefits and benefit plans for their taste.  They would like the level of cash wages required to be tied to the level of benefits paid by an employer, but the state has chosen to fix the cash wage component independent of benefits contributions.  A state law does not dictate or restrict the choices of ERISA plans by having nothing to do with employee benefits.

The flaw in Appellees' objection is that it could be raised even against a prevailing hourly cash wage law with no benefits component.  Such a law would create the same "disincentive" against awarding benefits, because employers would have to pay the wage no matter what level of benefits they provided.  We do not believe ERISA preempts such basic state wage regulation.  "The States have traditionally regulated the payment of wages," and the Supreme Court has not found "any indication that Congress intended such far-reaching consequences" as the preemption of this sphere of state authority.  Massachusetts v. Morash, 490 U.S. at 119.  See also 29 C.F.R. § 2510.3-1(b) (1993) ("employee welfare benefit plan" does not include "[p]ayment by an employer of compensation on account of work performed by an employee.").  ERISA does not preempt cash wage requirements unrelated to employee benefits, nor does it require the state to encourage benefits contributions by reducing the minimum cash wage where an employer makes large benefits contributions.[17]

---

[17].  Through the benefits component, the state has in fact extended employers the option of paying part of the minimum wage through cash or benefits.  As discussed below, we find this permissible under Shaw, 463 U.S. 85.  See infra at II(C)(2)(b).  The state is, however, under no obligation to offer employers

Plainly, a minimum cash wage requirement will impose an additional cost on a Pennsylvania public works contractor which would otherwise pay less than the minimum, and this cost, like any other imposed on an employer, could influence its choices regarding ERISA benefits contributions.  But this could be said of any wage regulation.  For example, the Supreme Court upheld a Massachusetts statute that required employers to pay employees for all unused vacation time upon discharge, because the law was an instance of wage regulation and did not relate to employee benefit plans.  Morash, 490 U.S. 107.  And the Maine statute upheld in Fort Halifax required employers to give a severance payment of one week's salary for every year an employee had worked in the event of a plant closing.  482 U.S. at 3-4.  The severance payment represented "a one-time obligation . . . creat[ing] no need for an ongoing administrative program for processing claims and paying benefits," and hence did not relate to an ERISA plan.  Id. at 12.  Both laws constrained employers' choices regarding wages and non-ERISA benefits, and could indirectly affect their decisions as to what ERISA benefits to offer employees.  However, wage laws are among the "many forms of state regulation under the police power which result in increases in the cost of doing business," United Wire, 995 F.2d at 1196, and this incidental effect does not create a preemptible relation

(..continued)
this choice, and may require all or, as here, part of a minimum wage to be paid in cash.

to ERISA plans.[18]  ERISA's preemption clause aims "to ensure

---

[18].  While state regulations may affect the cost of doing business in a state, they may not, consistent with ERISA, place administrative burdens and costs on ERISA plans that make it impractical for an employer to provide a nationwide plan.  Thus, the Fort Halifax Court stated, "Faced with the difficulty or impossibility of structuring administrative practices according to a set of uniform guidelines, an employer may decide to reduce benefits or simply not to pay them at all.").  482 U.S. at 13.  Similarly, the Holliday Court stated, "To require plan providers to design their programs in an environment of differing state regulations would complicate the administration of nationwide plans, producing inefficiencies that employers might offset with decreased benefits."  498 U.S. at 60.

State regulation may also be preempted for imposing costs directly on core functions of ERISA plans.  For example, in E-Systems, Inc. v. Pogue, 929 F.2d 1100 (5th Cir. 1991), cert. denied, 112 S. Ct. 585 (1991), the court held ERISA preempted a state tax on fees for services to ERISA plans and benefits paid by ERISA plans.  The Second Circuit went farther in Travelers Ins. Co. v. Cuomo, 14 F.3d 708 (2d Cir. 1993) (criticizing Rebaldo v. Cuomo, 749 F.2d 133 (2d Cir. 1984), cert. denied, 472 U.S. 1008 (1985)), where it overturned a New York law that added various surcharges to hospital bills of patients covered by commercial insurance carriers and health maintenance organizations.  Because the surcharges imposed "a significant economic burden on commercial insurers and HMOs," the court found they had "an impermissible impact on ERISA plan structure and administration."  Id. at 721.

It is not clear whether Travelers Ins. directly conflicts with United Wire.  See Travelers Ins., 14 F.3d at 721 n.3 (arguing United Wire interprets preemption clause too narrowly).  Unlike the statute in Travelers Ins., the New Jersey law in United Wire imposed a surcharge on all payors, not just commercial insurers and HMOs, and gave discounts only for "quantifiable economic benefits rendered to the institution or to the health care delivery system taken as a whole."  United Wire, 995 F.2d at 1189 (citation omitted).  Thus, the law might more legitimately be regarded as one of general application rather than one specifically affecting ERISA plans; it may also have had a less significant economic effect on such plans.  As we stated in United Wire, general legislation under a state's police power may raise the cost of doing business for ERISA plans without triggering preemption.  But in any event, the Prevailing Wage Act has a far less direct economic impact on ERISA plans than either of the hospital rate laws:  because in essence the Act imposes only a wage requirement, it changes employers' wage costs, not ERISA plan costs.

benefit plans will be governed by only a single set of regulations," FMC Corp. v. Holliday, 498 U.S. 52, 60 (1990), not to bestow on employers a uniform regulatory and economic environment for all their activities across the country. Because states enact their own wage and non-ERISA benefits regulations, Morash, 490 U.S. 107; Fort Halifax, 482 U.S. 1; Shaw 463 U.S. 85, collection laws, Mackey, 486 U.S. 825, and controls on hospital charges, United Wire, 995 F.2d 1179, employers must adjust their operations according to locale. This administrative and financial burden arises from the "patchwork scheme" of our federal system, a system whose "separate spheres of governmental authority," Alessi, 451 U.S. at 522, were not preempted by ERISA.

### b. Benefits component

Unlike the cash component, the benefits component of the prevailing minimum wage plainly has some connection to employee benefits, and thus to benefits plans, but we find no grounds for preemption here, either. Contracts for public works must either provide benefits contributions at the level determined in the prevailing wage or the monetary equivalent thereof. 34 Pa. Code § 9.106. Appellees suggest this provision creates a preemptible relation to ERISA plans merely by providing the option of complying with part of the minimum wage through benefits contributions. We disagree. The provision does not require or encourage an employer to provide certain benefits, to alter the manner in which it provides benefits, or even to provide any benefits at all. The benefits component only relates to ERISA plans when an employer decides to satisfy it through

contributions to ERISA plans instead of cash payments or contributions to non-ERISA benefits.  Where a legal requirement may be easily satisfied through means unconnected to ERISA plans, and only relates to ERISA plans at the election of an employer, it "affect[s] employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law `relates to' the plan."  Shaw, 463 U.S. at 100 n.21.

We are guided by Shaw, where the Court held ERISA did not preempt a New York law requiring employers to pay sick-leave benefits to employees unable to work because of pregnancy.  Section 4(b)(3) of ERISA exempts from the statute any plan "maintained solely for the purpose of complying with applicable . . . disability insurance laws," 29 U.S.C. § 1003(b)(3); such plans may therefore be regulated by the state.  The Court held § 4(b)(3) only saved from preemption plans solely devoted to disability benefits and did not exempt a plan that included provisions for benefits subject to ERISA along with provisions intended to comply with state disability laws.  Id. at 106-07.  However, the Court held that because § 4(b)(3) allowed New York to require employers to provide certain benefits in a non-ERISA plan -- one solely devoted to disability benefits -- it could also offer them the option of providing those benefits along with non-disability benefits in an ERISA plan.  Thus,

> while the State may not require an employer
> to alter its ERISA plan, it may force the
> employer to choose between providing
> disability benefits in a separately
> administered plan and including the state-
> mandated benefits in its ERISA plan.  If the
> State is not satisfied that the ERISA plan

> comports with the requirements of its
> disability insurance law, it may compel the
> employer to maintain a separate plan that
> does comply.

Id. at 108.  The benefits component of the prevailing minimum

wage extends to employers a similar choice.  A state requirement

that an employer pay a minimum cash wage does not relate to ERISA

plans.  The benefits component represents a sum of money an

employer may pay either through cash wages or through benefits

contributions, some of which may be toward ERISA plans.  To

paraphrase Shaw, if the state is not satisfied that the amount of

benefits contributions satisfies the total wage requirement, it

compels the employer to pay greater cash wages.

Thus, when Appellees complain the Prevailing Wage Act

impermissibly subjects their ERISA plans to different regulations

in Pennsylvania than elsewhere, they are speaking of a law

requiring only that when their benefits contributions fall short

of the prevailing minimum, they may make up the difference with

cash.[19]  Like the New York law in Shaw, the Prevailing Wage Act

is not preempted, because an employer may comply without making

any adjustment in its ERISA plans.  Unless the employer chooses

otherwise, the benefits component imposes a cash wage

requirement, and it is of no consequence that this requirement is

particular to Pennsylvania public works projects -- as discussed

above, ERISA does not preempt a state's power to set a minimum

cash wage.  See supra at II(C)(2)(a).

---

[19].  They also admit they could simply decline to participate in
public works contracts.

Some of Appellees' objections are levelled at the line-item approach to the Prevailing Wage Act, which was in effect for all benefits before the Declaratory Order was issued, and continued for non-ERISA benefits thereafter.  We acknowledge this would be a different case if the Act required line-item specification in the benefits component.[20]  We believe a state can set a minimum cash wage, and allow an employer the option of paying part of that in benefits.  We doubt, however, a state could also specify that only particular benefits could be given in lieu of cash payments without relating to ERISA plans, since that would favor certain benefits plans over others.[21]  Line-item specification would effectively create a cash incentive to award the predetermined benefits and not others, and to award certain amounts of those benefits and no more.  As the Court of Appeals for the Tenth Circuit said:

> We accept, as a general proposition, the state's right to regulate wages.  But a wage law that provides an option favoring certain ERISA plans and benefits . . . over other ERISA plans and benefits . . . is not a law of "general application" and may be used to effect change in the administration, structure and benefits of an ERISA plan.

---

[20].  See supra note **Error! Bookmark not defined.**.

[21].  For example, a predetermination for Common Heavy & Highway Laborers reproduced in the joint appendix gives hourly prevailing minimums for health and welfare benefits, pension benefits, and education, but nothing for the other eight categories, such as apprenticeship and training, vacation, or legal services.  Under the line-item approach, the contractor hiring a Common Highway Laborer would get a wage offset by paying him up to $2.62 an hour in health benefits, but no offset for health benefits beyond that, and no offset for payments for apprenticeship and training.

National Elevator Indus., 957 F.2d at 1561 (holding ERISA preempted an Oklahoma law that reduced the minimum wage for employees only in a specified apprenticeship program, which was an ERISA plan).  Pursuant to its power to set minimum level of remuneration to workers, a state may allow part of a minimum wage to be satisfied by benefits contributions.  But the state asserts an additional power, the power to determine what benefits workers should receive, when it gives preferred status to some benefits over others in a minimum wage scheme.  This power is not left to the states under ERISA.[22]

### c.  Administration

Finally, we must consider whether the Prevailing Wage Act and the accompanying regulations "dictate or restrict the choices of ERISA plans with regard to their . . . reporting and administration."  United Wire, 995 F.2d at 1193.  Administrative simplicity is one of the purposes of ERISA, and "Congress

---

[22].  Other courts have found states may not favor one benefits plan, or one type of benefits plan, over another.  In General Electric Co. v. New York State Dep't of Labor, 891 F.2d 25 (2d Cir. 1989), cert. denied, 496 U.S. 912 (1990), the court ruled ERISA preempted New York's prevailing wage law, which required benefits contributions in particular categories and amounts or their cash equivalents.  The court found the law objectionable for a number of reasons, including the fact that the law effectively prescribed "the type and amount of an employer's contributions to a plan," and "the nature and amount of benefits thereunder."  Id., 891 F.2d at 29.  (The General Electric court also objected to the administrative burden imposed on employers by the New York law.  Id.  It is not clear whether the court would have found the law acceptable if line-item compliance in the benefits package had not been required.)  See also Local Union 598 v. J.A. Jones Constr. Co., 846 F.2d 1213 (9th Cir.), aff'd 488 U.S. 881 (1988) (discussed supra at 29).

intended pre-emption to afford employers the advantages of a uniform set of administrative procedures governed by a single set of regulations." Fort Halifax, 482 U.S. at 11. But state laws are not necessarily preempted because they impose some administrative burden on ERISA plans. The Mackey Court was not moved by petitioners' argument that subjecting ERISA plans to state law garnishment by creditors of plan participants would also create "substantial administrative burdens and costs" when "plan trustees are served with a garnishment summons, become parties to a suit, and must respond and deposit the demanded funds due the beneficiary-debtor." Mackey, 486 U.S. at 831. We think preemption is not required where a state law places administrative requirements on ERISA plans so slight that the law "creates no impediment to an employer's adoption of a uniform benefit administration scheme." Fort Halifax, 482 U.S. at 14. See also Aetna Life Ins. Co. v. Borges, 869 F.2d 142, 146-47 (2d Cir.) ("What triggers ERISA preemption is not just any indirect effect on administrative procedures but rather an effect on the primary administrative functions of benefit plans, such as determining an employee's eligibility for a benefit and the amount of that benefit."), cert. denied, 493 U.S. 811 (1989).

Here, the bulk of administrative burdens placed on employers by the Prevailing Wage Act do not relate to ERISA plans at all. The law requires that each contractor and subcontractor "shall keep an accurate record showing the name, craft and the actual hourly rate of wage paid to each workman employed by him in connection with public work," that the record be preserved for

two years from the date of payment, and that it be open for inspection. 43 P.S.A. § 165-6. The regulations expand on this, requiring recording of personal information regarding the worker, specification of the hours worked each day, and the preservation of time cards and indentures and approvals regarding apprenticeships. 34 Pa. Code § 9.109. None of these records relates to employee benefit plans; rather, they are general employment data a state would require even if it were merely regulating cash wages.

Two minor administrative requirements are placed on ERISA plans. Under current implementation of the Act, the state must certify benefits as bona fide for them to count against the prevailing minimum benefits contribution. This apparently requires simply that the contributions actually be made to fringe benefit programs and be held for or attributed to the exclusive benefit of employees. See Bitzel Declaration, Bell App. at 393. The other requirement is that employers keep a record of their benefits contributions, and certify weekly to the officer disbursing public funds that they have paid wages in conformity with the contract, or indicate what wages remain unpaid.[23] 34 P.S.A. §§ 9.109, 9.110. We do not agree with amicus Chamber of Commerce of the United States that this entails complex, on-going measurements for each employee. Brief for Chamber of Commerce at 16-17. The memo from Field Inspection Supervisor Risaliti

---

[23]. Presumably, "wages in strict conformity with the contract," 34 P.S.A. § 9.110(a), include contributions for benefits.

indicates the Secretary approved a simple method for estimating hourly benefits contributions where premiums are paid monthly: the premium is divided by 160. Keystone App. at 80. We presume simple formulae are available for calculating the hourly and weekly value of benefits paid in other ways as well.

These records and reporting requirements entail only a slight burden. Calculating benefits paid out will not influence "decisions regarding the internal design and structure of benefit plans (e.g. who may collect, and how, and from whom)," United Wire, 995 F.2d at 1194 n.8, so the ease and efficiency of administering nationwide benefits plans will not be impeded. See also Minnesota Chapter, Assoc'd Builders v. Minnesota Dep't of Labor and Industry, Civ. No. 4-92-564, slip op. at 7, (D. Minn. April 27 1993) (Under Minnesota prevailing wage law, "[t]he requirement of calculating [the cost of benefits] falls on the employer itself, but does not place any administrative burden on the plan. The requirement of calculating costs and keeping records may somewhat increase the cost of the benefits plans, but this incidental impact on the plan need not lead to preemption."). We see no potential that the ability of plans to operate in several states will be impaired by the administrative requirements of the Prevailing Wage Act.

### d. Conclusion

We acknowledge that at some point, the quantity of a law's indirect effects on ERISA plans may require preemption. For example, as we have explained, under a line-item approach the Prevailing Wage Act would create incentives favoring some types

of benefits over others, even though it would still allow employers to substitute cash for benefits, and this would appear to exceed the state's authority under ERISA.  A significant, though indirect, economic effect on ERISA plans could also be grounds for preemption -- for example, though a state may set a minimum cash wage, if that minimum were so high that employers could not practically provide any benefits, the law might well be found to restrict the choices of ERISA plans.  As we interpret the Prevailing Wage Act, however, it neither encourages nor constrains any particular kind of conduct towards ERISA plans, nor does it cross the line from wage regulation to benefit regulation -- rather, while imposing a cost on employers, as any wage regulation will, the Act leaves employers free to structure benefit plans as they wish.

Furthermore, the Act and regulations represent reasonable exercises of a state's traditional power to regulate wages.  ERISA, and particularly the preemption clause, were designed to ensure fairness and consistency in employee benefit plans.  We see no indication, however, that in enacting ERISA, Congress expected it would require uniformity of wage regulation among the states or that its preemption provision would eviscerate state power to regulate wages.

### III.

The Prevailing Wage Act and its accompanying regulations do not relate to employee benefit plans in more than a tenuous, remote, and peripheral manner.  They do not refer to ERISA plans.  Rather, they establish a system of wage regulation

that neither burdens nor influences the benefits or structure of employee benefit plans, nor does it interfere with the uniform administration of such plans. "If a State creates no prospect of conflict with a federal statute, there is no warrant for disabling it from attempting to address uniquely local social and economic problems." Fort Halifax, 482 U.S. at 19.

For these reasons, we will reverse the district court's judgment to the extent it held the Prevailing Wage Act and regulations preempted. Because the Declaratory Order singles out ERISA plans for special treatment, however, we will affirm the judgment of the district court that ERISA preempts the Declaratory Order.